IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION

UNITED STATES OF AMERICA

V.               CRIMINAL NO. 5:22-CR-5-DCB-FKB

JAYDEN JAMES SHANNON

ORDER

BEFORE THE COURT is Defendant Jayden Shannon's ("Defendant") Motion to Suppress Evidence ("Motion") [ECF No. 26] in connection with a firearm found in the Defendant's possession and inculpatory statements made by Defendant during a May 26, 2020, search. The Court held a hearing on March 15, 2023, during which the Court heard the testimony of two officers involved in the search and the arguments of counsel. Having conducted an evidentiary hearing, and having reviewed all submissions of the parties, the hearing transcript, the documents and body camera video admitted into evidence at the hearing, applicable statutory and case law, and being otherwise fully informed of the premises, the Court finds as follows:

I.   Factual & Procedural Background

During March 2020, the Mississippi Department of Corrections ("MDOC") released Defendant, at that time imprisoned for felony robbery, onto Earned Release Supervision ("ERS"). [ECF No. 27] at 1. ERS is a form of release similar to parole

where the releasee remains subject to incarceration if a term of release is violated. Miss. Code Ann. § 47-5-138.[1] On March 11, 2020, Defendant signed a statement in which he (1) permitted his parole officer to visit him at any time or place, (2) agreed not to possess firearms, (3) agreed to truthfully answer questions and follow directions from MDOC personnel, and (4) acknowledged his continuing status as an inmate while on ERS.[2] [ECF No. 27] at 1-2.

On May 26, 2020, Brookhaven Police Department ("BPD") officers dispatched to Defendant's residence following a report of a disturbance that involved a firearm. Id. at 2. A witness informed the BPD officers that the Defendant possessed the firearm and went inside his residence. Id. The BPD officers then called Defendant's MDOC parole officer, Bryan Cavin, who arrived shortly thereafter. Id. Cavin entered the residence and spoke with Defendant, who informed Cavin of a firearm in his closet. Id. Upon recovering the firearm from the closet, Cavin placed Defendant in handcuffs. Id. at 2. Other officers Mirandized Defendant after he was walked outside to a police car. [ECF No. 28] at 2.

---

[1] This statute confirms that an inmate on ERS "shall retain inmate status and remain under the jurisdiction of [MDOC]." Id.
[2] State statutory law also provides that "any field officer may arrest an offender [on ERS] without a warrant." Miss. Code Ann. § 47-7-27.

On July 19, 2022, a grand jury indicted Defendant as a felon in possession of a firearm pursuant to 18 U.S.C. §§ 922(g)(1) and 924(a)(2) and for possessing a firearm with the manufacturer's serial number obliterated, altered, and removed pursuant to 18 U.S.C. §§ 922(k) and 924(a)(1)(B). [ECF No. 4] at 1. On February 3, 2023, Defendant filed the instant Motion. [ECF No. 26].

II.  Standard

"The Fourth Amendment provides that '[t]he right of the people to be free in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated....'" Bond v. United States, 529 U.S. 334, 120 S.Ct. 1462, 1464, 146 L.Ed.2d 365 (2000) (quoting U.S. Const. amend. IV). Though the Fourth Amendment "says nothing about suppressing evidence," the prudential "exclusionary" rule may be used to suppress the evidence where the remedy would deter future Fourth Amendment violations. Davis v. United States, 131 S.Ct. 2419, 2426-27, 180 L.Ed.2d 285 (2011).

In Miranda v. Arizona, 384 U.S. 436, 444 (1966), the Supreme Court held that in order to preserve the Fifth Amendment's privilege against self-incrimination, law enforcement officials must inform a suspect in custody of his right to remain silent, that any statement he makes may be used

as evidence against him, and that he has a right to retain counsel or have counsel appointed for him. "Statements obtained during a custodial interrogation without the benefit of adequate warnings under Miranda are generally inadmissible." U.S. v. Stevens, 487 F.3d 232, 241 (5th Cir. 2007), cert. denied, 552 U.S. 936 (2007). An individual is "in custody" for purposes of Miranda "when placed under formal arrest or when a reasonable person in the suspect's position would have understood the situation to constitute a restraint on freedom of movement of the degree which the law associates with formal arrest." United States v. Bengivenga, 845 F.2d 593, 596 (5th Cir. 1988)(en banc).

"When the government searches or seizes a defendant without a warrant, the government bears the burden of proving, by a preponderance of the evidence, that the search or seizure was constitutional." United States v. Guerrero-Barajas, 240 F.3d 428, 432 (5th Cir. 2001).

III. Legal Analysis

Defendant requests that the Court suppress statements made by Defendant to law enforcement and the firearm seized by law enforcement during its warrantless search on May 26, 2020. [ECF No. 26].

a. Fourth Amendment Issue

As an inmate released on ERS, Defendant remained subject to parole-style supervision with the additional caveat that a rule violation would result in a return to prison. Miss. Code Ann. § 47-5-138. Parolees "do not enjoy the absolute liberty to which every citizen is entitled." United States v. Knights, 534 U.S. 112, 119 (2001). Law enforcement officers, including parole or probation officers, can search a parolee's house on reasonable suspicion alone for investigatory and probationary purposes. United States v. Keith, 375 F.3d 346, 349-50 (5th Cir. 2004). Reasonable suspicion requires that an officer "be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." Terry v. Ohio, 392 U.S. 1, 21 (1968).

In this case, BPD officers informed Officer Cavin that a firearm had been involved in a disturbance outside Defendant's house, which caused Cavin to visit Defendant at his home and inquire about this firearm. Cavin testified that BPD Officer Cain called him and conveyed this information based on a witness's tip. As such, the officers had reasonable suspicion to undertake a warrantless search of Defendant's home.[3] No Fourth

---

[3] Officer Cain's bodycam footage also depicts that he requested permission from Defendant's grandmother, a co-occupant of the house, to enter Defendant's house and that she led him in. Consent obviates the warrant, probable cause, and reasonable suspicion requirements. Schneckloth v. Bustamonte, 412 U.S. 218 (1973).

5

Amendment violation occurred in this search. Knights, 534 U.S. at 119.

b. Fifth Amendment Issue

The Fifth Amendment and the Miranda exclusionary rule provide that any statement made while under custodial interrogation is inadmissible at trial unless Miranda warnings were provided and the subsequent statement was given voluntarily. Oregon v. Elstad, 470 U.S. 298, 306-07 (1985); Miranda, 384 U.S. at 444. Miranda defined custodial interrogation generally as meaning "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." Id. at 444.

The determination of whether a person is in custody depends on how a "reasonable person in the suspect's situation would perceive his circumstances." Yarborough v. Alvarado, 541 U.S. 652, 662 (2004). "[T]he initial determination of custody depends on the objective circumstances of the interrogation, not on the subjective views harbored by either the interrogating officers or the person being questioned." Stansbury v. California, 511 U.S. 318, 323 (1994).

An objective reasonableness inquiry has two general components: (1) what were the circumstances surrounding the

6

interrogation; and (2) given those circumstances, would a reasonable person have felt that they could terminate the questioning and leave. Thompson v. Keohane, 516 U.S. 99, 112 (1995); State v. Pomeroy, 713 So.2d 642, 645 (5th Cir. 1998). The Fifth Circuit identified four factors that are relevant to these inquiries: (1) the length of the encounter; (2) the location of the encounter; (3) the number of officers present; and (4) the element of surprise in the encounter. United States v. Fike, 82 F.3d 1315, 1324–25 (5th Cir. 1996).

At the time Officer Cavin questioned Defendant, there was no arrest or detention. No reasonable person could conclude that he was under arrest. Pomeroy, 713 So.2d at 645.

Officer Cain's bodycam footage briefly depicted the initial discussion: Defendant sat on his bed while appearing to smoke a cigarette and Cavin stood across from him. Defendant and Cavin spoke for a few minutes alone as Cavin investigated an incident involving the Defendant and a firearm. The encounter was not unnecessarily lengthy, it occurred in Defendant's own bedroom, and his parole officer with whom he had an established rapport conducted the questioning. The questioning could not have engendered excess surprise. No factor leads the Court to find that the circumstances were such that Defendant was detained, arrested, or subjected to police custody during the initial

7

discussion between Defendant and Officer Cavin. Fike, 82 F.3d at 1324-25.

Cavin only handcuffed Defendant after he had revealed the firearm and allowed Cavin to take possession of it. As such, Defendant made the inculpatory statements that he now seeks to suppress prior to his ultimate detention and arrest. Therefore, no actionable custodial interrogation took place and no Fifth Amendment violation occurred.

IV. Conclusion

For the foregoing reasons, the Defendant's Motion [ECF No. 26] shall be DENIED.

ACCORDINGLY,

IT IS HEREBY ORDERED that the Defendant's Motion to Suppress Evidence [ECF No. 26] is DENIED.

SO ORDERED, this 21st day of March, 2023.

/s/ David Bramlette
DAVID C. BRAMLETTE
UNITED STATES DISTRICT JUDGE